[No. F063632. Fifth Dist. July 30, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS BRYANT ELLIS, Defendant and Appellant.

**COUNSEL**

Mark J. Shusted, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**DETJEN, J.**—In this opinion, we hold the amendment to Penal Code section 4019 that became operative October 1, 2011 (hereafter the October 1, 2011, amendment) applies only to eligible prisoners whose crimes were committed on or after that date. Such prospective-only application does not run afoul of rules of statutory construction or violate principles of equal protection.

## PROCEDURAL HISTORY

In Kern County Superior Court case No. BF135285A, defendant Thomas Bryant Ellis was charged with offenses committed on January 16, 2011.[1] In case No. BF137801A, he was charged with offenses committed on July 26 and 27, 2011.

---

[1] The facts of the offenses are not pertinent to this appeal.

On September 9, 2011, defendant entered into a plea agreement that disposed of both cases. In return for an indicated aggregate sentence of four years, defendant pled no contest, in case No. BF135285A, to second degree burglary, and admitted having served two prior prison terms. (Pen. Code, §§ 460, subd. (b), 667.5, subd. (b).)[2] In case No. BF137801A, he pled no contest to unlawfully taking a vehicle (Veh. Code, § 10851, subd. (a)) and resisting an executive officer (Pen. Code, § 69).

On October 13, 2011, defendant was sentenced in both cases to jail, pursuant to section 1170, subdivision (h), for the indicated aggregate term. In case No. BF135285A, the trial court awarded 91 days of actual custody credits plus 44 days of conduct credits.[3] The court merely noted defendant's objection, made on equal protection grounds, to the failure to award him enhanced conduct credits.

Defendant now contends he is entitled to an additional 46 days of conduct credits under the version of section 4019 that was in effect at the time he was sentenced, i.e., the October 1, 2011, amendment. Failure to award the additional days, he says, violates his right to equal protection. We disagree.

## DISCUSSION

Section 4019, which specifies the rate at which conduct credit can be earned by those in local custody, has undergone numerous amendments in the past few years. Insofar as we are concerned, the version in effect when defendant committed his crimes provided for deductions for every six days of confinement, such that if all possible days were earned, six days were deemed served for every four days of actual custody. (§ 4019, subd. (g); id., former subds. (b), (c) & (f); Stats. 2010, ch. 426, § 2, eff. Sept. 28, 2010.)

In conjunction with the "2011 Realignment Legislation addressing public safety" (Stats. 2011, ch. 15, § 1; see Pen. Code, § 1170, subd. (h)), section 4019 was amended to provide for deductions for every four days of confinement, so that if all possible days are earned, four days will now be deemed served for every two days of actual confinement. (§ 4019, subds. (b), (c) & (f).) Originally, this change was to apply to those confined for crimes committed on or after July 1, 2011. (Stats. 2011, ch. 15, § 482, eff. Apr. 4, 2011.) By further amendment made before the realignment legislation became operative, this date was changed to October 1, 2011. (Stats. 2011, ch. 39, § 53, eff. June 30, 2011.) Pursuant to the October 1, 2011, amendment (Stats. 2011, 1st Ex. Sess. 2011–2012, ch. 12, § 35, eff. Sept. 21, 2011, operative

---

[2] Further statutory references are to the Penal Code unless otherwise stated.

[3] No credit was awarded in case No. BF137801A.

Oct. 1, 2011), subdivision (h) of section 4019 presently states: "The changes to this section . . . shall apply prospectively and shall apply to prisoners who are confined to a county jail . . . for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law."

Defendant contends the October 1, 2011, amendment created two identically situated classes of prisoners: those who earn conduct credits at the enhanced rate because their crimes occurred on or after October 1, 2011, and those (like defendant) who do not earn conduct credits at the enhanced rate because their crimes occurred before that date. Defendant says he is entitled to enhanced credits, calculated retroactively, unless a compelling state interest supports the disparate treatment of the two classes. In his view, no such interest can be shown.

Recently, the California Supreme Court addressed whether the amendment to section 4019 that became operative on January 25, 2010 (hereafter the January 25, 2010, amendment), should be given retroactive effect so as to permit prisoners who served time in local custody before that date to earn conduct credits at the increased rate provided for by that amendment due to a state fiscal emergency. Despite the fact the Legislature included no statement of intent in that regard in the amendment (see Stats. 2009, 3d Ex. Sess. 2009–2010, ch. 28, § 50, eff. Jan. 25, 2010), the state high court held the amendment applied prospectively only, meaning qualified prisoners in local custody first became eligible to earn conduct credit at the increased rate beginning on the amendment's operative date. (*People v. Brown* (2012) 54 Cal.4th 314, 318 [142 Cal.Rptr.3d 824, 278 P.3d 1182] (*Brown*).)

■ In so holding, the court observed that "[w]hether a statute operates prospectively or retroactively is, at least in the first instance, a matter of legislative intent." (*Brown, supra*, 54 Cal.4th at p. 319.) If the Legislature's intent is not clear with respect to a particular statute, section 3 and cases construing it require prospective-only application, unless it is " 'very clear from extrinsic sources' " that the Legislature intended retroactive application. (*Brown, supra*, at p. 319.) The high court found no cause to apply the January 25, 2010, amendment retroactively as a matter of statutory construction. (*Id.* at pp. 320–322.) As a result, "prisoners whose custody overlapped the statute's operative date . . . earned credit at two different rates." (*Id.* at p. 322.)

In the case of the October 1, 2011, amendment, the Legislature expressly stated the changes were to apply prospectively only. (§ 4019, subd. (h).) Following *Brown*'s reasoning, the October 1, 2011, amendment does not apply retroactively as a matter of statutory construction.

■ *Brown* also addressed *In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948] (*Estrada*), in which the court held that when the Legislature amends a statute to reduce punishment for a particular criminal offense, courts will assume, absent evidence to the contrary, that the Legislature intended the amended statute to apply to all defendants whose judgments were not yet final on the statute's operative date. (*Brown, supra*, 54 Cal.4th at p. 323; *Estrada, supra*, 63 Cal.2d at pp. 742–748.) The *Brown* court concluded *Estrada* did not apply to former section 4019, as amended operative January 25, 2010, as that statute did not alter the penalty for any particular crime. (*Brown, supra*, at pp. 323–325, 328.) Rather than addressing punishment for past criminal conduct, section 4019 "addresses *future conduct* in a custodial setting by providing increased incentives for good behavior." (*Brown, supra*, at p. 325.)

We conclude *Brown*'s reasoning and conclusion apply equally to current section 4019. Accordingly, the rule of *Estrada, supra*, 63 Cal.2d 740, does not require retroactive application of the October 1, 2011, amendment.

*Brown* next held prospective-only application of the January 25, 2010, amendment did not violate the equal protection clauses of the federal and state Constitutions. (*Brown, supra*, 54 Cal.4th at p. 328.) The court stated:

■ "The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally. [Citation.] Accordingly, ' "[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." ' [Citation.] 'This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged." ' [Citation.]

■ ". . . [T]he important correctional purposes of a statute authorizing incentives for good behavior [citation] are not served by rewarding prisoners who served time before the incentives took effect and thus could not have modified their behavior in response. *That prisoners who served time before and after former section 4019 took effect are not similarly situated necessarily follows.*" (*Brown, supra*, 54 Cal.4th at pp. 328–329, second italics added.)

The high court rejected the argument that its decision in *People v. Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874] (*Sage*) required a contrary conclusion. (*Brown, supra*, 54 Cal.4th at pp. 329–330.) The version of section 4019 at issue in *Sage* authorized presentence conduct credit for misdemeanants who later served their sentences in county jail, but not for felons who ultimately were sentenced to state prison. The *Sage* court found

this unequal treatment violative of equal protection, as it found no "rational basis for, much less a compelling state interest in, denying presentence conduct credit to" felons. (*Sage, supra*, at p. 508.)

The *Brown* court acknowledged that one practical effect of *Sage* "was to extend presentence conduct credits retroactively to detainees who did not expect to receive them, and whose good behavior therefore could not have been motivated by the prospect of receiving them." (*Brown, supra*, 54 Cal.4th at p. 329.) Nevertheless, it declined to read *Sage* in such a way as to foreclose a conclusion "that prisoners serving time before and after incentives are announced are not similarly situated." (*Brown, supra*, at p. 330.) The *Brown* court explained: "The unsigned lead opinion 'by the Court' in *Sage* does not mention the argument that conduct credits, by their nature, must apply prospectively to motivate good behavior. A brief allusion to that argument in a concurring and dissenting opinion [citation] went unacknowledged and unanswered in the lead opinion. As cases are not authority for propositions not considered [citation], we decline to read *Sage* for more than it expressly holds." (*Brown, supra*, at p. 330.)

Finally, *Brown* rejected the notion the case before it was controlled by *In re Kapperman* (1974) 11 Cal.3d 542 [114 Cal.Rptr. 97, 522 P.2d 657] (*Kapperman*), in which the court held equal protection required retroactive application of a statute granting credit to felons for time served in local custody before sentencing and commitment to state prison, despite the fact the statute was expressly prospective. (*Brown, supra*, 54 Cal.4th at p. 330.) *Brown* found *Kapperman* distinguishable: "Credit for time served is given without regard to behavior, and thus does not entail the paradoxical consequences of applying retroactively a statute intended to create incentives for good behavior. *Kapperman* does not hold or suggest that prisoners serving time before and after the effective date of a statute authorizing *conduct* credits are similarly situated." (*Brown, supra*, at p. 330.)

■ We can find no reason *Brown*'s conclusions and holding with respect to the January 25, 2010, amendment should not apply with equal force to the October 1, 2011, amendment. (See *People v. Lara* (2012) 54 Cal.4th 896, 906, fn. 9 [144 Cal.Rptr.3d 169, 281 P.3d 72].) Accordingly, we reject defendant's claim he is entitled to earn conduct credits at the enhanced rate provided by current section 4019 for the entire period of his presentence incarceration.

Based on dicta in *People v. Olague* (2012) 205 Cal.App.4th 1126 [141 Cal.Rptr.3d 185] (*Olague*) (petn. for review pending, petn. filed June 14, 2012) and defendant's claim of ambiguity in subdivision (h) of section 4019, we asked the parties to brief the issue whether defendant nonetheless is entitled to enhanced conduct credits for the period between October 1, 2011, and October 13, 2011, the date he was sentenced. We now conclude he is not.

In *Olague*, which antedated *Brown*, the Court of Appeal considered a claim that the October 1, 2011, amendments to section 4019 and related statutes allowed the defendant to earn presentence credits at a rate from which he previously had been disqualified because he had sustained a prior serious felony conviction. In addressing the defendant's equal protection argument, the *Olague* court stated: "Defendant describes the two affected classes here as 'those prison inmates who committed serious felonies who will receive additional conduct credits since they committed their crimes after October 1, 2011[,] and . . . those . . . inmates who committed serious felonies who will not receive additional conduct credits since they committed their crimes prior to October 1, 2011.' Although the point may not be crucial to this appeal, we do not believe this accurately describes the effect of the statute as properly construed. It is true that after declaring itself to operate 'prospectively,' the October 2011 amendment declares that it will apply 'to prisoners who are confined . . . for a crime committed on or after October 1, 2011.' (§ 4019, subd. (h).) Standing alone this would indeed suggest a classification based upon the date of the offense. In the next sentence, however, the Legislature declared, 'Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law.' (§ 4019, subd. (h).) Of course it would have been impossible to earn days in presentence confinement on an offense which had not yet been committed. This sentence is therefore meaningless unless the liberalized credit scheme applies to crimes committed before the stated date. While the statute may thus seem somewhat self-contradictory, the contradiction is only implied. The ambiguity is best resolved by giving effect to both sentences and concluding that the liberalized scheme applies both to prisoners confined for crimes committed after October 1, 2011, and to prisoners confined after that date for earlier crimes. In this view, the correct classification is between prisoners earning credit for presentence confinement prior to that date and prisoners earning such credit after that date." (*Olague, supra*, 205 Cal.App.4th at pp. 1131–1132.)

■ We respectfully disagree. In our view, the Legislature's clear intent was to have the enhanced rate apply *only* to those defendants who committed their crimes on or after October 1, 2011. (See *People v. Lara, supra*, 54 Cal.4th at p. 906, fn. 9.) The second sentence does not extend the enhanced rate to any other group, but merely specifies the rate at which all others are to earn conduct credits. So read, the sentence is not meaningless, especially in light of the fact the October 1, 2011, amendment to section 4019, although part of the so-called realignment legislation, applies based on the date a defendant's crime is committed, whereas section 1170, subdivision (h), which sets out the basic sentencing scheme under realignment, applies based on the date a defendant is sentenced.

## DISPOSITION

The judgment is affirmed.

Kane, Acting P. J., and Franson, J., concurred.

A petition for a rehearing was denied August 23, 2012, and appellant's petition for review by the Supreme Court was denied October 31, 2012, S205334.