Filed 5/23/13  P. v. Wren CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C070284 |
| Plaintiff and Respondent, | (Super. Ct. No. 10F06969) |
| v. | |
| CHARLES WREN, | |
| Defendant and Appellant. | |

A jury found defendant Charles Wren guilty of inflicting corporal injury on his girlfriend, S., and vandalizing her house following an incident where he severely beat S. and then "tore up [her] house."

On appeal from the resulting conviction, defendant contends the trial court erred in admitting a prior act of domestic violence he perpetrated against his ex-wife and in calculating his presentence custody credits.  Disagreeing, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In August 2010, defendant and S. were living together in her Sacramento house. They got into a fight because S. would not give him money.  Defendant went

" 'ballistic' " and started yelling and screaming.  He hit her multiple times.[1]  She ended up with a swollen and split lip, bruising and swelling on her face and eye, lumps on her head from defendant hitting her and slamming her face into a wall, a scratch on her neck from being choked by him, and blood on her pants.  The fight was interrupted when S.'s father came to the house.  He took S. with him and told defendant to get out by morning.

When S. returned the next day, her house was "tor[n] up."  There were holes in many of the walls, broken windows, clothes cut up and strewn everywhere, and food in the kitchen dumped and covered in bleach.

### Prior Acts Of Domestic Violence

Defendant had perpetrated prior acts of domestic violence against S. and against his ex-wife.

#### 1. *Prior Acts Involving S.*

In August 2007, S. reported an incident to police in which defendant had threatened to kill her, punched her face, and thrown three bricks at her.  He started to walk away, but then he returned and knocked her to the ground.  She also told police about an earlier incident in which defendant shattered her car window, cutting her ear, necessitating six stitches.

In August 2008, S. reported an incident to police in which defendant threw S. down by her hair and stomped on her, causing bruising on her face.

#### 2. *Prior Act Involving Defendant's Ex-Wife*

In June 1995, defendant was married to a woman with whom he had a six-month-old daughter.  Defendant and his ex-wife got into an argument about him having an extramarital affair.  The argument "g[o]t violent," and defendant's ex-wife tried to call

---

[1]     At trial, S. initially denied that defendant hit her but admitted that she told police he had.  She also testified she could not remember what happened that night.  When the People showed her pictures of her injured face, S. testified she "guess[ed]" defendant hit her.  She admitted she "[w]ould . . . rather not testify about this incident."

police.  He took the cordless phone and hit her with it on the nose, causing her to bleed. When she tried to leave their house, defendant threw a glass bottle at her that passed her head and shattered the living room window behind her.

DISCUSSION

I

*The Court Did Not Err In Admitting The Prior Act Of*

*Domestic Violence Involving Defendant's Ex-Wife*

Defendant contends the court violated his federal and state due process right to a fair trial by admitting evidence of the prior act involving his ex-wife because the incident was remote, cumulative, and unrelated to the current crimes and the court did not properly weigh the probative value of the evidence against its prejudicial effect.

When the court admitted the prior act evidence related to defendant's ex-wife, it noted the following:  Initially, the parties had discussed admitting the evidence when the People thought S. was going to be a recanting witness.  In that context, the prior-act evidence related to the ex-wife "was in the interest of justice because the only other [domestic violence] witness was [S.]"  In fact, S.'s testimony ended up conceding many of the incidents she had originally reported to police.  In light of S.'s testimony, "the interest of justice may still be served, but it seem[ed] like a far more limited argument." The People then noted that because of "how the case ha[d] changed," "the People stopped questioning [the ex-wife] about further prior domestic violence in this case."  The court concluded by noting that the People limited their questioning of the ex-wife to only one incident and the "more egregious aspects of her [domestic violence] experience were not presented to the jury."

This court has held that Evidence Code section 1109, which allows for propensity evidence in domestic violence cases, does not violate due process in light of its safety valve granting trial courts the discretion to exclude acts of domestic violence under Evidence Code section 352.  (*People v. Johnson* (2000) 77 Cal.App.4th 410, 416-420.)

3

Evidence Code section 352 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  A trial court's decision to admit the evidence is reviewed for an abuse of discretion.  (*People v. Cain* (1995) 10 Cal.4th 1, 33.)

The trial court did not abuse its discretion here.  The court cautiously admitted only one prior incident involving the ex-wife, given that S. admitted, albeit reluctantly, the acts of domestic violence perpetrated by defendant.  The prior act involving the ex-wife was much less egregious than the current domestic violence in that the jury learned only that defendant hit his ex-wife in the nose with a cordless phone, causing her to bleed, whereas the current domestic violence involved defendant repeatedly punching S. and slamming her face into a wall, causing many injuries.  The age of the incident involving the ex-wife was not a factor weighing against its admission because defendant had not led a blameless life in the interim, as evidenced by his repeated violence against S. that predated the current act of domestic violence.  As our Legislature has recognized, " '[t]he propensity inference is particularly appropriate in the area of domestic violence because on-going violence and abuse is the norm in domestic violence cases.' " (*People v. Johnson*, *supra*, 77 Cal.App.4th at p. 419, quoting Assem. Com. Rep. on Public Safety (June 25, 1996) pp. 3-4.)  This was exactly what the prior act evidence showed here.  Finally, the evidence was relevant insofar as it related to patterns and characteristics of domestic abuse, which might help explain why S.'s testimony was filled with "I don't remember" or "I don't recall" equivocations.

Against this backdrop of relevance, countervailing concerns of unfair prejudice, consumption of time, and the like were limited.  As noted, the People elicited evidence of only one incident involving defendant's ex-wife that was far less egregious than the charged offense.  The incident involving the ex-wife took up only four pages of testimony and elicited no cross-examination.  Under these circumstances, the trial court

4

was well within its discretion to admit the prior-act evidence involving defendant's ex-wife.

## II

### *The Court Awarded Defendant*

### *The Correct Number Of Presentence Conduct Credits*

Defendant contends he was entitled to additional presentence conduct credits under the October 2011 amendment to section Penal Code[2] section 4019, arguing the amendment should be applied retroactively to his sentence. He makes both a statutory construction argument and an equal protection argument. Neither is persuasive.

Defendant committed his offenses on August 7, 2010. He was sentenced on January 27, 2012. At the time of his offense, defendant was entitled under former section 4019 to two days of conduct credit for every four days actually served. The trial court correctly awarded defendant 92 days of conduct credit based on his 187 days of actual custody credit.

Effective October 1, 2011, section 4019 was amended to provide two days of conduct credit for every two days of actual custody credit. (§ 4019, subd. (f) ["a term of four days will be deemed to have been served for every two days spent in actual custody"].) The amended statute provides: "The changes to this section . . . shall apply prospectively and shall apply to prisoners who are confined to a county jail, city jail, industrial farm, or road camp for a crime committed on or after October 1, 2011." (§ 4019, subd. (h).) Despite this express statement of prospective application, defendant contends the amendment should be applied retroactively to his sentence.

Defendant's first argument is based on statutory construction. He contends the second sentence of section 4019, subdivision (h), suggests that days earned by a prisoner

---

[2]    Further section references are to the Penal Code.

5

after October 1, 2011, must be calculated at the rate established by the new law.  The language in section 4019, subdivision (h), that "[a]ny days earned . . . prior to October 1, 2011, shall be calculated at the rate required by the prior" law could be read to imply that any days earned by a defendant after that date should be calculated using the amended rate, regardless of the date the offense was committed.  (*People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 52.)  However, to do so would invalidate the immediately preceding sentence of section 4019, which explicitly limits the benefits of the new accrual rate to those defendants who committed their crimes after October 1, 2011.  (*Rajanayagam*, at p. 52.)  Defendant's proffered interpretation would "defy the Legislature's clear intent in subdivision (h)'s first sentence and contradict well-settled principles of statutory construction."  (*Rajanayagam*, at p. 52.)

Defendant's second argument is based on equal protection, asserting that were section 4019 interpreted to apply only to crimes committed on or after October 1, 2011, it would violate equal protection principles.  Our Supreme Court rejected a similar argument in *People v. Brown* (2012) 54 Cal.4th 314, in deciding whether an earlier amendment to section 4019 "should be given retroactive effect so as to permit prisoners who served time in local custody before that date to earn conduct credits at the increased rate provided for by that amendment due to a state fiscal emergency."  (*People v. Ellis* (2012) 207 Cal.App.4th 1546, 1550.)  The *Brown* court explained "the important correctional purposes of a statute authorizing incentives for good behavior [citation] are not served by rewarding prisoners who served time before the incentives took effect and thus could not have modified their behavior in response.  That prisoners who served time before and after former section 4019 took effect are not similarly situated necessarily follows."  (*Brown*, *at* pp. 328-329.)  The Supreme Court held the equal protection clauses of the federal and California Constitutions did not require retroactive application of the amendment.  (*Id*. at p. 318.)

6

For these reasons, the trial court properly awarded defendant conduct credit based on the formula in effect when he committed his crimes.

DISPOSITION

The judgment is affirmed.


      ROBIE    , J.


We concur:


    HULL    , Acting P. J.


    DUARTE    , J.